1 Matt Valenti, Esq. (State Bar No. 253978)
2 E-mail: mattvalenti@valentilawapc.com
VALENTI LAW APC
3 Mail: P.O. Box 712533
San Diego, CA 92171-2533
4 Phone: (619) 540-2189

Attorney for Plaintiff Jamey Perry

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMEY PERRY,<br><br>   Plaintiff,<br><br>vs.<br><br><br>PARKING PLUS, INC., a California corporation; and HELD PROPERTIES, INC., a California corporation,<br><br>   Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>DENIAL OF CIVIL RIGHTS AND ACCESS TO PUBLIC FACILITIES TO PHYSICALLY DISABLED PERSONS IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, (42 U.S.C. §12101, *et seq.*) AND THE UNRUH CIVIL RIGHTS ACT, (CALIFORNIA CIVIL CODE §51, *et seq.*)<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff JAMEY PERRY (hereinafter referred to as "Plaintiff") complains of PARKING PLUS, INC., a California corporation; and HELD PROPERTIES, INC., a California corporation (each, individually a "Defendant" and collectively "Defendants") and alleges as follows:

## I.   INTRODUCTION

1. This civil rights action seeks to redress harm suffered by Plaintiff while accessing medical care at the Medical Centre of Santa Monica ("Medical Center") and its adjacent parking garage.

2. As detailed further below, among other issues, the Medical Center's parking garage has far fewer ADA-compliant accessible parking spaces than required, and the vast majority are on the roof. This means disabled patients and visitors, including Plaintiff, must take extra time and effort looking for a space and getting to their medical appointments, and are disproportionately affected by inclement weather. This extra travel time also results in disabled people paying more for their parking than other patients and visitors.

3. When disabled patients and visitors choose to be dropped off and picked up at the entrance to the Medical Center rather than park, they encounter a drop-off and loading zone that is not accessible and presents a potentially deadly safety hazard getting in and out of their vehicle next to moving traffic.

4. As one online reviewer wrote in 2017 regarding the Medical Center's parking: **"So terrible! If you are handicapped it is unbelievably terrible."**

5. More than thirty years after the passage of the Americans with Disabilities Act, a medical center which describes itself as "one of the premier medical complexes in Southern California" should not be remiss in its legal duty to provide full and equal access to disabled patients and visitors.

## II.   PARTIES

6. Plaintiff is a California resident and a qualified physically disabled person. She uses a wheelchair for mobility due to paraplegia. Plaintiff prides

herself on her independence and also on empowering other disabled persons to be independent.

7. Defendants are and were the owners, operators, lessors and/or lessees of the subject businesses, property, and facilities at all times relevant in this Complaint.

8. Defendant PARKING PLUS, INC. operates a public, paid parking garage ("Parking Garage") with approximately 900 total spaces, located in the Medical Centre of Santa Monica at 2001-2021 Santa Monica Blvd., Santa Monica, CA 90404, and has operated it at all relevant times.

9. Defendant HELD PROPERTIES, INC. owns and operates the Medical Centre of Santa Monica ("Medical Center") also located at 2001-2021 Santa Monica Blvd., Santa Monica, CA 90404, and has owned and operated it at all relevant times.

10. Plaintiff alleges that the Defendants have been and are the owners, franchisees, lessees, general partners, limited partners, agents, trustees, employees, subsidiaries, partner companies and/or joint ventures of each of the other Defendants, and performed all acts and omissions stated herein within the course and scope of such relationships causing the damages complained of herein.

### III.   JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343(a)(3) and (a)(4) for violations of the Americans with Disabilities Act of 1990, U.S.C. §12101, *et seq*.

12. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising out of the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which expressly incorporates the Americans with Disabilities Act.

13. Venue is proper in this court pursuant to 28 U.S.C. U.S.C. §1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

## IV.  FACTS

14. Plaintiff uses a wheelchair for mobility.

15. Defendants' Medical Center and Parking Garage are open to the public, places of public accommodation, and business establishments.

16. The Medical Center is comprised of two Class A medical office buildings with a total leasable space of approximately 204,000 square feet.

17. According to its website, the Medical Center has been recognized as "one of the premier medical complexes in Southern California" and is "dedicated to meet [sic] the needs of the medical specialists and houses some of the most prominent practices in California." *See*, https://www.heldproperties.com/office-building/the-medical-centre-of-santa-monica/.

18. The Medical Center has floor layouts, suites, mechanical systems, and procedure rooms designed for medical specialists.

19. The Medical Center and Parking Garage have direct access to Providence St. John's Health Center via a second-floor enclosed walkway.

20. A significant number of tenants in the Medical Center—if not the majority—offer outpatient clinical services of a hospital, rehabilitation facilities specializing in treating conditions that affect mobility, or outpatient physical therapy. These include, but are not limited to, the following specific group practices and services: Providence St. John's Health Patient Services Center; Center for Hip and Knee Replacement at Providence St. John's; The Spine Institute at Providence St. John's; Pacific Heart Institute; Pacific Pediatric Cardiology Medical Group; and Orthopros, Inc. In addition, numerous individual medical professionals in the Medical Center specialize in treating conditions that affect

mobility, including but not limited to, cardiology, neurology, podiatry, geriatrics, rheumatology and arthritis, and pulmonary diseases.

21. The Parking Garage is a 300,000 square foot mechanical access parking structure located within the Medical Center complex. The Parking Garage directly serves the Medical Center as well as the Providence-St. Johns' Health Center via a second-floor enclosed walkway.

22. The Parking Garage comprises two separate and distinct parking facilities: a daily rate facility and a monthly rate facility.

23. A passenger drop-off and loading zone is located adjacent to the Parking Garage and in front of the main entrance to the Medical Center.

24. Plaintiff went to the Medical Center and Parking Garage for appointments with her doctor, whose office is located in the Medical Center. Plaintiff visited the Medical Center as a patient at least sixteen times, on the following dates in 2020: July 20, August 10, August 19, August 27, August 28, August 29, August 31, September 2, September 4, September 10, September 16, September 25, October 2, November 2, December 7, and December 9.

25. On each such occasion, in order to access the care of her doctor, Plaintiff either paid to park in the daily rate section of the Parking Garage or used the passenger drop-off and loading zone.

26. During each of Plaintiff's visits to the Medical Center and Parking Garage, Defendants did not offer persons with disabilities with equivalent facilities, privileges, advantages, and accommodations offered to other persons.

27. Plaintiff encountered barriers that interfered with and denied her the ability to use and enjoy the goods, services, privileges, advantages, and accommodations offered by Defendants at the Medical Center and Parking Garage.

28. Parking for patients and visitors of the Medical Center are among the facilities, privileges advantages, and accommodations offered by Defendants. When parking is provided, there must be a minimum number of parking spaces

complying with the accessibility requirements of the ADA and the California Building Code (CBC).

29. Ten percent of patient and visitor parking spaces provided to serve hospital outpatient facilities and free-standing buildings providing outpatient clinical services of a hospital must be accessible spaces. 2010 ADA Standards §§ 208.2.1, 502.1; CBC §§ 11B-208.2.1, 11B-502.1.

30. Twenty percent of patient and visitor parking spaces provided to serve rehabilitation facilities specializing in treating conditions that affect mobility and outpatient physical therapy facilities must be accessible spaces. 2010 ADA Standards §208.2.2, 502.1; CBC §§ 11B-208.2.2, 11B-502.1.

31. Unfortunately, while the daily rate section of the Parking Garage has approximately 635 total spaces, only 15 are accessible spaces. This is far less than the 10% required for hospital outpatient facilities and free-standing buildings providing outpatient clinical services of a hospital, and the 20% required for rehabilitation facilities specializing in treating conditions that affect mobility and outpatient physical therapy facilities.

32. Accessible parking spaces must also be located on the shortest possible accessible route from parking to an accessible entrance, and may only be grouped on one level of a parking garage when greater or equal access is provided in terms of proximity to an accessible entrance, cost, and convenience. 2010 ADA Standards §§ 208.3.1, 502.1; CBC §§ 11B-208.3.1, 11B-502.1.

33. Unfortunately, 11 of the 15 total accessible parking spaces in the Parking garage are located on the roof. The accessible spaces are not close in proximity to either the street level exit of the parking garage or the main entrance of the Medical Center; in fact, they are further from these points than the great majority of all other parking spaces in the Parking Garage. These accessible spaces on the roof are also fully exposed to the elements.

34. Facilities like the Parking Garage must also provide accessible directional signage and signage indicating means of egress. 2010 ADA Standards §§ 216.4.1, 216.4.3; CBC §§ 11B-216.4.1, 11B-216.4.3.

35. Unfortunately, directional signage indicating the location of accessible parking is limited or non-existent, making it difficult to locate these spaces, and once found, difficult to find the accessible route or routes to the exit of the Parking Garage or entrance of the Medical Center.

36. The segregation of the vast majority of accessible parking on the roof and the lack of required accessibility signage in the Parking Garage results in unequal and impaired access for disabled patients and visitors, including Plaintiff, in at least three distinct ways.

37. First, disabled patients and visitors usually are compelled to drive through every level of the Parking Garage to locate an accessible parking space on the roof. Second, disabled patients and visitors are disproportionately subject to inclement weather when utilizing the accessible spaces on the roof. And third, disabled patients and visitors are charged more. Since the daily rate section of the Parking Garage charges by fractions of an hour, disabled patients and visitors pay more for parking due to the extra time it takes to drive through the entire Parking Garage, locate the accessible parking on the roof, travel the longest possible route to the street level exit of the Parking Garage or the entrance of the Medical Center—and then repeat all of that additional travel time when leaving.

38. Due to the blatantly unequal dispersal and segregation of accessible parking spaces in the Parking Garage, Plaintiff endured extreme heat conditions when she parked on the roof during several of her August, September, and October visits. She also incurred additional parking fees because of the extra time needed to park in the accessible spaces on the roof.

39. Plaintiff was repeatedly frustrated and humiliated by the experience of having to pay more for worse parking simply because she is disabled.

40. Reviews left on Parkopedia.com, a website that publishes customer reviews of parking lots, indicate that the lack of accessible parking has similarly impacted disabled patients for years. On March 14, 2017 a reviewer wrote: "So terrible! If you are handicapped it is unbelievably terrible." *See*, https://en.parkopedia.com/parking/garage/medical_centre_of_santa_monica/90404/santa_monica/?arriving=202012301600&leaving=202012301800

41. Another review, from May 14, 2015, shows how the segregated placement of most of the accessible parking spaces on the roof leads to higher parking fees for disabled patients and visitors: "Hard to find a space – had to drive all the way through the garage to the roof. It took nearly 12 minutes to exit. The time looking for space and waiting for the cashier to exit cost me an additional $3.00 in parking fees – Unfair." *Id.*

42. Passenger drop-off and loading zones are another one of the facilities, privileges, and advantages offered by Defendants to patrons of the Medical Center and Parking Garage. When such drop-off and loading zones are offered there must be a marked zone, including a marked access aisle, complying with the accessibility requirements of the ADA and the California Building Code. Medical care facilities and mechanical access parking garages also must have an accessible loading zone. 2010 ADA Standards §§ 209.2.1, 209.3, 209.5, 503.1; CBC §§ 11B-209.2.1, 11B-209.3, 11B-209.5, 11B-503.1.

43. Although there is a passenger drop-off and loading zone open to patients and visitors of the Medical Center, there is no marked, accessible passenger drop-off and loading zone.

44. The existing drop-off and loading zone is a safety hazard for disabled people, since there is no protected access aisle or accessible path of travel. Disabled patients and visitors to the Medical Center who utilize the drop-off and loading zone are at a heightened risk of being hit by oncoming traffic entering the Parking Garage.

45. Plaintiff was concerned about her physical safety when she used the drop-off and loading zone and frustrated by its inaccessibility.

46. Plaintiff personally encountered all these barriers.

47. These inaccessible conditions denied Plaintiff full and equal access and caused her difficulty, humiliation, anxiety, and frustration.

48. The barriers existed during all of Plaintiff's visits to the Medical Center and Parking Garage.

49. Plaintiff alleges that Defendants knew that the architectural barriers prevented equal access. Plaintiff will prove that Defendants had actual knowledge that the architectural barriers prevented equal access and that the noncompliance with the Americans with Disabilities Act and Title 24 of the California Building Code regarding accessible features was intentional.

50. Plaintiff intends to return to Defendants' public accommodation facilities in the near future. Plaintiff is currently deterred from returning because of the knowledge of barriers to equal access that continue to exist at Defendants' facilities that relate to Plaintiff's disabilities.

51. Defendants have failed to maintain in working and useable conditions those features necessary to provide ready access to persons with disabilities. 28 C.F.R. §36.211(a).

52. Defendants have the financial resources to remove these barriers without much expense or difficulty in order to make their Property more accessible to their mobility impaired patients and visitors. These barriers are readily achievable to remove. The United States Department of Justice has identified that these types of barriers are readily achievable to remove.

53. To date, Defendants refuse to remove these barriers, in violation of the law, willfully depriving disabled persons including Plaintiff of important civil rights.

54. On information and belief, the Plaintiff alleges that the Defendants' failure to remove these barriers was intentional because the barriers are obvious. During all relevant times Defendants had authority, control and dominion over these conditions and therefore the absence of accessible facilities was not a mishap but rather an intentional act.

55. The barriers to access are listed above without prejudice to Plaintiff citing additional barriers to access by an amended complaint after inspection by Plaintiff's access consultant. *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903 (9th Cir. 2011); *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008); *Chapman v. Pier One Imports (USA), Inc.*, 631 F.3d 939 (9th Cir. 2011). All of these barriers to access render the premises inaccessible to physically disabled persons who are mobility impaired, such as Plaintiff, and are barriers Plaintiff may encounter when she returns to the premises. All facilities must be brought into compliance with all applicable federal and state code requirements, according to proof.

**FIRST CAUSE OF ACTION**

Violation of the Americans With Disabilities Act of 1990

(42 U.S.C. §12101, *et seq.*)

(Against All Defendants)

56. Plaintiff alleges and incorporates by reference, as if fully set forth again herein, each and every allegation contained in all prior paragraphs of this complaint.

57. More than thirty years ago, the 101st United States Congress found that although "physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination…in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services." 42 U.S.C. §12101(a).

58. In 1990 Congress also found that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals," but that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. §12101(a).

59. In passing the Americans with Disabilities Act of 1990, which was signed into law by President George H. W. Bush on July 26, 1990 (hereinafter the "ADA"), Congress stated as its purpose:

> "It is the purpose of this Act
>
> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day to-day by people with disabilities."

42 USC §12101(b).

60. As part of the ADA, Congress passed "Title III – Public Accommodations and Services Operated by Private Entities" (42 U.S.C. §12181 *et seq*.). Title III of the ADA prohibits discrimination against any person "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation

by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §12182(a).

61. The specific prohibitions against discrimination include, *inter alia*, the following:

- 42 U.S.C. §12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

- 42 U.S.C. §12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

- 42 U.S.C. §12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

- 42 U.S.C. §12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

- 42 U.S.C. §12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

62. Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

63. The acts and omissions of Defendants set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

64. The removal of each of the physical and policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of §12181 and §12182 of the ADA. Removal of each and every one of the architectural and/or policy barriers complained of herein was already required under California law. Further, on information and belief, alterations, structural repairs or additions since January 26, 1993, have also independently triggered requirements for removal of barriers to access for disabled persons per §12183 of the ADA. In the event that removal of any barrier is found to be "not readily achievable," Defendants still violated the ADA, per §12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

65. On information and belief, as of the date of Plaintiff's encounter at the premises and as of the filing of this Complaint, Defendants' actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other mobility disabled persons in other respects, which violate Plaintiff's right to full and equal access and which discriminate against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. §12182 and §12183 of the ADA.

66. Defendants' actions continue to deny Plaintiff's rights to full and equal access and discriminated and continue to discriminate against her on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages and accommodations, in violation of the ADA, 42 U.S.C. §12182.

67. Further, each and every violation of the Americans With Disabilities Act of 1990 also constitutes a separate and distinct violation of California Civil Code §51(f), §52, §54(c) and §54.1(d), thus independently justifying an award of damages and injunctive relief pursuant to California law, including but not limited to Civil Code §54.3 and §55.

## SECOND CAUSE OF ACTION

Violation of the Unruh Civil Rights Act

(California Civil Code §51, *et seq.*)

(Against All Defendants)

68. Plaintiff alleges and incorporates by reference, as if fully set forth again herein, each and every allegation contained in all prior paragraphs of this complaint.

69. California Civil Code §51 provides that physically disabled persons are free and equal citizens of the state, regardless of their medical condition or disability:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, **disability, or medical condition** are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

California Civil Code §51(b) (emphasis added).

70. California Civil Code §51.5 also states, in part: "No business, establishment of any kind whatsoever shall discriminate against…any person in this state on account" of their disability.

71. California Civil Code §51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

72. California Civil Code §52 provides that the discrimination by Defendants against Plaintiff on the basis of her disability constitutes a violation of the general antidiscrimination provisions of §51 and §52.

73. Each of Defendants' discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code §52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

74. Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code §51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code §52. Per Civil Code §51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

75. The actions and omissions of Defendants as herein alleged constitute a denial of access to and use of the described public facilities by physically disabled persons within the meaning of California Civil Code §51 and §52.

76. As a proximate result of Defendants' action and omissions, Defendants have discriminated against Plaintiff in violation of Civil Code §51 and §52, and are responsible for statutory, compensatory and actual damages to Plaintiff, according to proof.

## PRAYER FOR RELIEF

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiff is granted the relief she requests.

Plaintiff and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California.

The need for relief is critical because the civil rights at issue are paramount under the laws of the United States of America and the State of California.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

1. Issue a preliminary and permanent injunction directing Defendants as current owners, operators, lessors, and/or lessees of the premises to modify the above-described property, premises, policies and related facilities to provide full and equal access to all persons, including persons with physical disabilities;

2. Issue a preliminary and permanent injunction pursuant to ADA §12188(a) and state law directing Defendants to provide facilities and services usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided; to cease any discriminatory policies; and to train Defendants' employees and agents how to recognize disabled persons and accommodate their rights and needs;

3. Retain jurisdiction over the Defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of physically inaccessible public facilities and policies as complained of herein no longer occur, and cannot recur;

4. Award to Plaintiff all appropriate damages, including but not limited to actual and statutory damages according to proof;

5. Award to Plaintiff all reasonable attorney fees, litigation expenses, and costs of this proceeding pursuant to 42 U.S.C §12205 and California Civil Code §52; and

6. Grant such other and further relief as this Court may deem just and proper.

DATED:  January 7, 2021                    VALENTI LAW APC

By:  */s/ Matt Valenti*
    Matt Valenti, Esq.
    Attorney for Plaintiff

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all claims and issues for which a jury is permitted.

DATED: January 7, 2021                          VALENTI LAW APC

By: */s/ Matt Valenti*
    Matt Valenti, Esq.
    Attorney for Plaintiff